IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION
No. 5:11-CT-3262-D

| | | |
|---|---|---|
| JOHNNY GRAYSON and | ) | |
| DOUGLAS VAN VLEET, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | **ORDER** |
| | ) | |
| DR. LAWRENCE SICHEL et al., | ) | |
| | ) | |
| Defendants. | ) | |

On December 14, 2011, Johnny Grayson ("Grayson") and Douglas Van Vleet ("Van Vleet") (collectively, "plaintiffs"), federal inmates proceeding pro se, filed a complaint seeking relief under Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics, 403 U.S. 388 (1971) [D.E. 1]. Plaintiffs name eight defendants, including Harley Lappin ("Lappin"), the Director of the Bureau of Prisons ("BOP"), Tracy Johns ("Johns"), the Warden of Federal Correctional Institution-Butner ("FCI-Butner"), BOP health administrators Carlos Duchesne ("Duchesne") and Kenneth Gomez ("Gomez"), and several medical professionals (collectively, "defendants"). Compl. [D.E. 1] 2–3. Plaintiffs both seek leave to proceed in forma pauperis [D.E. 5–6]. On December 21, 2011, Van Vleet filed a motion requesting that the United States Marshal Service serve the complaint [D.E. 3]. On December 29, 2011, Van Vleet filed a motion asking the court to order that he be allowed to meet and correspond with Grayson [D.E. 8].[1] On March 30, 2012, Van Vleet again requested that he be

---

[1] On December 9, 2011, the BOP released Grayson. See BOP Inmate Locator, http://www.bop.gov/iloc2/InmateFinderServlet?Transaction=IDSearch&needingMoreList=false&IDType=IRN&IDNumber=06052-087&x=71&y=19 (last visited June 21, 2012). Grayson has not provided the court with his new address, as required by the local rules. See Local Civil Rule 83.3, EDNC.

allowed to contact Grayson [D.E. 14], and filed a motion seeking to stay the collection of filing fees during the pendency of this litigation [D.E. 15]. As explained below, the court dismisses the complaint as frivolous and denies the pending motions.

I.

In reviewing an in forma pauperis application, a court "shall dismiss" any case that is "frivolous or malicious," that "fails to state a claim on which relief may be granted," or that "seeks monetary relief against a defendant who is immune from such relief." 28 U.S.C. § 1915(e)(2)(B). A case is frivolous if "it lacks an arguable basis either in law or in fact." Neitzke v. Williams, 490 U.S. 319, 325 (1989). Claims that are legally frivolous are "based on an indisputably meritless legal theory and include claims of infringement of a legal interest which clearly does not exist." Adams v. Rice, 40 F.3d 72, 75 (4th Cir. 1994) (quotations omitted). Claims that are factually frivolous lack an "arguable basis" in fact. Neitzke, 490 U.S. at 325.

The standard used to evaluate the sufficiency of the pleading is flexible, and a pro se complaint, "however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." Erickson v. Pardus, 551 U.S. 89, 94 (2007) (per curiam) (quotation omitted). Erickson, however, does not undermine the "requirement that a pleading contain 'more than labels and conclusions.'" Giarratano v. Johnson, 521 F.3d 298, 304 n.5 (4th Cir. 2008) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007)); see Ashcroft v. Iqbal, 556 U.S. 662, 677–84 (2009); Coleman v. Md. Ct. of Appeals, 626 F.3d 187, 190 (4th Cir. 2010), aff'd, 132 S. Ct. 1327 (2012); Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc., 591 F.3d 250, 255–56 (4th Cir. 2009); Francis v. Giacomelli, 588 F.3d 186, 193 (4th Cir. 2009).

Grayson uses a medical device called an Implantable Cardioverter Defibrillator ("ICD"). See Compl., Ex. 1 ("Documents") 8. On January 9, 2011, Grayson's ICD began to repeatedly sound an

2

alarm, and Grayson notified a correctional officer of the incessant noise. Compl. 9. The officer "notified [Butner] medical [staff] . . . and medical told [the officer] to send . . . Grayson to medical [immediately]." Id. Prison medical staff then examined Grayson and performed an EKG on him. The medical staff instructed him to return to the medical facility if the alarm sounded again. Id. The following day, Grayson's ICD alarm sounded again. Id. The alarm caused a nurse and a physician to again examine Grayson and to perform another EKG. Id. The physician recommended that Grayson be taken to an emergency room for further evaluation. Id. Grayson was then taken to an emergency room, but was not treated or evaluated there due to an administrative error. Id. Nevertheless, a physician at the hospital informed Grayson that Grayson probably needed a new ICD, but that this need was not urgent. Id.

On March 2, 2011, defendant Willie Sessions ("Sessions"), a non-BOP cardiologist, examined Grayson and checked Grayson's ICD. Id. Sessions told Grayson that "he disabled the wire and the patient alarm should not go off again." Id. Sessions also "stated the[re] [were] issues with the ICD but [that he] did not feel like it was an emergency." Id. 10. However, the ICD alarm sounded again the next day, causing Butner medical staff to schedule another appointment for Grayson to see Sessions. Id. 9. On April 27, 2011, Sessions again examined Grayson. Id. Grayson contends that the repeated alarms demonstrate that the "BOP . . . could not correctly provide [necessary] medical treatment," that BOP officials should have made an appointment for Grayson to be examined by an electrophysiologist rather than a cardiologist, and that defendants denied Grayson a "requested . . . stress test to see if his heart is strong enough to function properly with the damaged device." Id. 9–11.

Van Vleet suffers from rheumatoid arthritis and osteoarthritis. Id. 12. Before his incarceration, Van Vleet saw a rheumatologist regularly. Id. 14. From 2002 to 2005, Van Vleet was

3

intermittently incarcerated at Federal Correctional Institution-Ashland ("FCI-Ashland"), where Gomez, a BOP physician, denied Van Vleet's request "to see a [r]heumatologist on a regular basis .... [because] Gomez stated he could handle ... Van Vleet's medical care ...." Id. 12, 14. In August 2002, a physical therapist provided Van Vleet with a walker. Id. 12. At some point, the BOP transferred Van Vleet to FCI-Butner, where a rheumatologist examined him on October 30, 2002, and changed his medication regimen. Id. On March 3, 2003, the BOP returned Van Vleet to FCI-Ashland, where he "requested again to see the [r]heumatologist and was again denied." Id. On July 24, 2003, while being transported, United States Marshals lost Van Vleet's prescribed hand braces. Id.[2]

On January 7, 2004, Gomez referred Van Vleet to Dr. Ralph Touma, who performed x-rays and recommended surgery and strengthening exercises. Id. 12. On April 29, 2004, the BOP transferred Van Vleet to Federal Medical Center-Lexington ("FMC-Lexington") for surgery. Id. On October 7, 2004, a surgeon examined Van Vleet and "stated [that Van Vleet] needed to see a [r]heumatologist and maximize treatment before explor[ing] surgical alterations." Id. Defendant Maria Morrero ("Morrero"), the FMC-Lexington medical director, scheduled the October 7, 2004 appointment. Id. On January 25, 2005, Van Vleet saw a rheumatologist. Id. Van Vleet subsequently learned that the BOP intended to transfer him back to FCI-Ashland, and Van Vleet expressed to Morrero his "concern[] about his surgery and being able to see a [r]heumatologist." Id. 13. Morrero assured Van Vleet that he would see a rheumatologist and signed a transfer summary which contained incorrect information concerning Van Vleet's work history. Id. Ultimately, the

---

[2] Van Vleet has not named any marshal as a defendant, and does not appear to assert a claim based on the loss of his hand braces. To the extent that he does intend to assert such a claim, the claim fails. See, e.g., Hudson v. Palmer, 468 U.S. 517, 533–34 (1984).

BOP transferred Van Vleet to Federal Correctional Institution-Oakdale ("FCI-Oakdale"), where he saw a rheumatologist who placed him on a different medication and raised his care level. Id.

The BOP then transferred Van Vleet to FCI-Butner, where he "is having problems seeing a [r]heumatologist on a regular schedule . . . ." Id. Although Van Vleet is receiving medication, the "Butner medical board" denied surgery despite his repeated requests for such surgery. Id. 13, 15.

To state a claim for inadequate medical care under Bivens, an incarcerated prisoner must plausibly assert deliberate indifference to his serious medical needs by prison officials in violation of his Eighth Amendment rights. See Estelle v. Gamble, 429 U.S. 97, 104 (1976). To prove such a claim, plaintiffs "must demonstrate that the officers acted with 'deliberate indifference' (subjective) to [their] 'serious medical needs' (objective)." Iko v. Shreve, 535 F.3d 225, 241 (4th Cir. 2008) (quoting and citing Estelle, 429 U.S. at 104); Holly v. Scott, 434 F.3d 287, 298 (4th Cir. 2006). However, a prisoner is not entitled to choose his course of treatment. See, e.g., Russell v. Sheffer, 528 F.2d 318, 319 (4th Cir. 1975) (per curiam). Likewise, mere negligence in diagnosis or treatment does not state a constitutional claim. Estelle, 429 U.S. at 105–06.

Plaintiffs' allegations fail to plausibly assert that any defendant acted with deliberate indifference to plaintiffs' medical needs. Plaintiffs acknowledge that were examined and treated for their medical needs. As for Grayson, medical staff promptly examined him each time his ICD sounded an alarm and two physicians determined that the alarms did not indicate an emergency. To the extent that Sessions failed to disable the alarm, Grayson alleges, at most, negligence. As for Van Vleet, he received medication, a walker, physical therapy, and other measures for his conditions. Van Vleet's statement that he was able to more frequently see a rheumatologist before being incarcerated fails to demonstrate that any defendant was deliberately indifferent to his medical needs. To the extent that either plaintiff would have preferred a different course of treatment from the

5

courses that they received, such unmet desires do not give rise to constitutional violations. Moreover, to the extent that plaintiffs allege that medical professionals disagreed over how best to treat them, such disagreements do not support claims for deliberate indifference. See, e.g., United States v. Clawson, 650 F.3d 530, 538 (4th Cir. 2011); Wright v. Collins, 766 F.2d 841, 849 (4th Cir. 1985); Bowring v. Godwin, 551 F.2d 44, 47–48 (4th Cir. 1977). Therefore, the court dismisses plaintiffs' claims as frivolous.

Alternatively, plaintiffs have named two defendants not because they were directly involved in plaintiffs' medical care, but based on their supervisory positions. However, "[i]n a . . . Bivens action—where masters do not answer for the torts of their servants—the term 'supervisory liability' is a misnomer. Absent vicarious liability, each Government official, his or her title notwithstanding, is only liable for his or her own misconduct." Iqbal, 556 U.S. at 677; see Trulock v. Freeh, 275 F.3d 391, 402 (4th Cir. 2001). Therefore, the court dismisses plaintiffs' claims against Lappin and Johns as frivolous. Additionally, to the extent that plaintiffs seek to maintain their case as a class action, plaintiffs are not lawyers and may not assert any claim on behalf of another person. See Leses v. Martinsburg Police Dep't, 138 F. App'x 562, 564 (4th Cir. 2005) (per curiam) (unpublished); Fowler v. Lee, 18 F. App'x 164, 165 (4th Cir. 2001) (per curiam) (unpublished); Oxendine v. Williams, 509 F.2d 1405, 1407 (4th Cir. 1975) (per curiam).

As for Van Vleet's challenge to the court's collection of the filing fee before adjudicating the merits of the action, the Prison Litigation Reform Act altered section 1915 to provide that a prisoner who brings a civil action in forma pauperis is responsible for the entire amount of the normal civil action filing fee. See 28 U.S.C. § 1915(b)(1); see also United States v. Jones, 215 F.3d 467, 468 (4th Cir. 2000). Thus, the court denies Van Vleet's motion to stay collection of the filing fee.

6

Case 5:11-ct-03262-D   Document 16   Filed 06/21/12   Page 6 of 7

II.

In sum, the court DENIES Van Vleet's motion to stay collection of the filing fee [D.E. 15], DENIES AS MOOT Van Vleet's motions for service by the United States Marshal Service and to communicate with Grayson [D.E. 3, 8], and DISMISSES plaintiffs' complaint [D.E. 1] as frivolous under 28 U.S.C. § 1915A. The Clerk of Court shall close the case.

SO ORDERED. This 21 day of June 2012.

*JAMES C. DEVER III*
Chief United States District Judge